UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

PEMSTAR, INC.,
a Minnesota Corporation,

CIVIL NO. 01-1665 (DSD/JMM)

Plaintiff,

v.

REPORT AND RECOMMENDATION

SINGAPORE TECHNOLOGIES PTE LTD.,
a Singapore Corporation,

Defendant.

The above matter came on for hearing before the undersigned on January 23, 2002 upon Defendant's Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b)(2) of the Federal Rules of Civil Procedure [Docket Nos. 7 and 14]. Kenneth A. Prine, Esq. appeared on behalf of Plaintiff; Rikke A. Dierssen-Morice, Esq. appeared on behalf of Defendant. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Upon the following Findings of Fact/Report, it is recommended that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b)(2) of the Federal Rules of Civil Procedure [Docket Nos. 7 and 14] be granted, and that the Complaint be dismissed without prejudice.

MAR 2 9 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## FINDINGS OF FACT/REPORT

## APPLICABLE STANDARDS

We begin by noting familiar principals which govern the consideration of this motion. "To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating, by a prima facie showing, that personal jurisdiction exists." Stevens v. Redwing, 146 F.3d 538, 543 (8th Cir. 1998)(citations omitted). Although the plaintiff bears the ultimate burden of establishing the existence of personal jurisdiction at trial by a preponderance of the evidence, on a motion to dismiss, the plaintiff need only make a prima facie showing. Northrup King Co. v. Compania Productora Semillas Algondoneras Selectas, S.A., 51 F.3d 1383, 1387 (8th Cir. 1995)(citations omitted). "For the purposes of a prima facie showing, the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE) Ltd., 89 F.3d 519, 522 (8th Cir. 1996)(citations omitted).

An analysis of whether a court has personal jurisdiction must take into account state and constitutional requirements. Wessels, Arnold & Henderson v. Nat'l Medical Waste, Inc., 65 F.3d 1427, 1431 (8th Cir. 1995). "The federal court in a diversity case must determine whether [the] defendant is subject to the court's jurisdiction under the state long arm statute, and if so, whether exercise of that jurisdiction comports with due process." Stevens, 146 F.3d at 543 (quoting Moog World Trade Corp. v. Bancomer, S.A., 90 F.3d 1382, 1384 (8th Cir. 1996)). This two-part analysis requires the Court to first ask whether the activity of the defendant falls within the scope of the forum state's

long arm statute.

Minnesota's long arm statute provides, in relevant part, as follows:

> As to a cause of action arising from acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any non-resident individual . . . in the same manner as if it were a domestic corporation or he were a resident of this state. The section applies if, in person or through an agent, the foreign corporation or non-resident individual:
>
> (a) Owns, uses, or possesses any real or personal property situated in this state, or
> (b) Transacts any business within the state . . . .

Minn. Stat. § 543.19, subd. 1. Courts have interpreted the Minnesota long-arm statute to extend jurisdiction to the outer limits permitted by the due process clause of the U.S. Constitution. Domtar v. Niagara Fire Ins. Co, 533 N.W.2d 25, 29 (Minn. 1995); Valspar Corp. v. Lukken Color Corp., 495 N.W.2d 408, 410 (Minn. 1992); Jarvis & Sons v. Freeport Shipbuilding, 966 F.2d 1248, 1249 (8th Cir. 1992). Thus, in Minnesota cases, the Court's focus need only be on constitutional issues, namely whether the assertion of jurisdiction satisfies due process of law.

The Supreme Court has stated that the fundamental due process question to be addressed is whether there are sufficient minimum contacts between the nonresident defendant and the forum state so that the assertion of personal jurisdiction over the nonresident defendant is consistent with the traditional notions of fair play and substantial justice. See, e.g., Burger King Corp. v. Rudzewick, 471 U.S. 462, 472 (1985); Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) ("We have said that the defendant's contacts with the forum State must be such that maintenance of the suit "does

not offend 'traditional notions of fair play and substantial justice.'"); International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) ("due process requires only that in order to subject a defendant to a judgment in personam . . . he have such minimum contacts with it such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice."). To assist in the application of these broad principles, Courts have articulated several standards to be considered in determining whether the exercise of jurisdiction over a "foreign" defendant is constitutionally permissible.

The principal consideration is fundamental fairness: "Once it has been decided that a defendant purposefully established contacts with a forum state, these contacts must be considered in light of other factors to determine whether the assertion of personal jurisdiction would agree with fair play and substantial justice." Minnesota Mining & Manufacturing Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 697 (8th Cir. 1995), cert. denied, 516 U.S. 1184 (1996) (citing International Shoe Co., 326 U.S. at 320). Therefore, "[e]ven if the defendant has purposefully established the necessary 'minimum contacts' within the forum State, consideration of 'fair play and substantial justice' may nevertheless defeat the reasonableness of jurisdiction." Sybartic, Inc. v. Interport Intern, Inc., 957 F.2d 522, 524 (8th Cir. 1992) (citing Burger King, 471 U.S. at 476-78).

The concept of "general jurisdiction" hinges upon a defendant's "continuous and systematic contacts with the forum state, regardless of whether the plaintiff's claim or claims are related to any of those contacts." Zumbro, 861 F. Supp. at 778. "General jurisdiction refers to the power of a state to adjudicate any cause of action and does not depend on the relationship between the cause of action and the contacts."

Burlington Indus., 97 F.3d at 1103. The exercise of general jurisdiction comports with due process concerns "because a defendant whose contacts with the forum state are systematic and continuous should reasonably anticipate being haled into court there, even where the plaintiff's claims 'neither arise out of nor are related to the defendant's contacts with the forum.'" Zumbro, 861 F. Supp. at 778.

The Eighth Circuit Court of Appeals has established five factors to consider when determining whether general jurisdiction exists. Northrup King, 51 F.3d at 1388. They are: "(1) the nature and quality of defendant's contacts with the forum state; (2) quantity of contacts; (3) source and connection of the cause of action with those contacts; and, to a lesser degree, (4) the interests of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Id. (citations omitted). The fourth and fifth considerations are secondary factors in the inquiry. Id.

Courts have "further elaborated on the third factor -- the relationship of the cause of action to the contacts -- to distinguish between specific and general jurisdiction." Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996). "The inquiry is whether the non-resident defendant 'has purposefully directed his activities at . . . the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities.'" Northrup King, 51 F.3d at 1387 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). "Specific jurisdiction" exists where a court "premises jurisdiction over a defendant upon the relationship of plaintiff's claims and defendant's forum state activities." Zumbro, Inc. v. California Nat'l Prods., 861 F. Supp. 773, 778 (D. Minn. 1994).

## PARTIES/BACKGROUND

The gravamen of Pemstar's claims is a debt owed to it by Micropolis, Inc. ("Micropolis USA"). The Complaint alleges that the sole Defendant, Singapore Technologies Pte Ltd., is liable for that debt based on agreement, promissory estoppel and equitable estoppel. Micropolis USA is a subsidiary of Micropolis Singapore, which is a subsidiary of Singapore Technologies. The relationships can be diagramed as follows:

**Defendant Singapore Technologies** ← ←
| ↑
Micropolis Singapore (collection)
| ↑
Micropolis USA → (debt) → **Plaintiff Pemstar**

Pemstar is a Minnesota corporation. It manufactures precision electrical and component assemblies and provides a broad range of design and manufacturing engineering services. Defendant Singapore Technologies is a Singapore corporation engaged in the technology, engineering, infrastructure, property and finance businesses.

Micropolis USA operated in Chatsworth, California designing and producing high end computer disk drives. Beginning in 1996, Pemstar sold computer disk drive parts to Micropolis USA, until Micropolis USA ceased operations in 1997. Before ceasing its operations, Micropolis USA incurred debts to Pemstar totaling approximately $2,500,000. On November 12, 1997, Micropolis USA filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Central District of California, Los Angeles. Pemstar filed a claim against Micropolis USA in the bankruptcy court seeking to recover amounts owed to it by Micropolis USA. Pemstar's claim was settled pursuant to a stipulation between the

parties. Under the stipulation, Pemstar's claim was allowed in the amount of $1,200,000. The remainder of Pemstar's claim was disallowed with prejudice.

On September 10, 2001, Pemstar commenced the instant action seeking to recover Micropolis USA's debt from Singapore Technologies. Pemstar claims Singapore Technologies induced it to sell its products to Micropolis USA by assuring Pemstar that Micropolis USA's debt would be paid, even if it meant Singapore Technologies had to pay the debt itself. It contends: (1) Micropolis USA had either actual or apparent authority to bind Singapore Technologies; (2) Singapore Technologies ratified Micropolis USA's actions by either paying or ensuring that Micropolis USA paid a considerable portion of its past due debt to Pemstar; (3) Pemstar believed that Mr. S.C. Tien, a Singapore Technologies executive, was in a position to assure Pemstar that Singapore Technologies would ensure payment of Micropolis USA's debt to Pemstar; and (4) Singapore Technologies induced Pemstar to act to its detriment.

## ANALYSIS

As a back drop to our analysis, we note that the Supreme Court has instructed us that the concept of minimum contacts serves a dual purpose: "It protects the defendant against the burden of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed upon them by their status as coequal sovereigns in a federal system." World-Wide Volkswagen, 454 U.S. at 292. In discussing the latter purpose, the Court cautioned:

> Even if the defendant would suffer minimal inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law

> to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

Id. at 294 (citing Hanson, 357 U.S. at 251, 254).

We review below the factors to be considered in determining whether personal jurisdiction may be asserted.

**A. Quantity of Contacts**

Plaintiff submitted a Memorandum and two affidavits with exhibits in opposition to the Motion to Dismiss. It is not easy to clearly ascertain from Plaintiff's papers precisely what contacts Defendant is claimed to have had with Minnesota, but they include the following: a June 1997 visit to Pemstar in Minnesota by Mr. Tien, a Singapore Technologies executive; a discussion concerning Micropolis USA's debt to Pemstar between Plaintiff and Mr. Tien during Mr. Tien's 1997 visit to Pemstar, three e-mail messages sent by Mr. Tien from his Singapore Technologies e-mail address to Pemstar; one e-mail message from Pemstar to Mr. Tien at his Singapore Technologies e-mail address; and an allegation that Micropolis USA employees in California and Micropolis Singapore employees in Singapore sent business cards to Pemstar in Minnesota bearing marks indicating that Micropolis USA and Micropolis Singapore were "member[s] of Singapore Technologies." Plaintiff does not contend that Singapore Technologies is registered to do business in Minnesota, nor that it has a place of business, inventory, bank accounts, real estate, personal property, employees, or agents in Minnesota.

Defendant contends that Mr. Tien's visit to Pemstar in 1997 had nothing to

do with Micropolis USA, Micropolis Singapore or Singapore Technologies, but that he visited Pemstar because he was an indirect shareholder of Pemstar that wanted to see Pemstar's new facility. Other than the 1997 visit, Mr. Tien only visited Pemstar in Minnesota on one other occasion, in 1995 before Micropolis Singapore and Micropolis USA were formed. While he visited Pemstar in1997, Mr. Tien sat in on a meeting and met a number of Pemstar employees. He further claims that Micropolis USA was discussed only once, when Pemstar's CEO mentioned that some receivables were outstanding and asked Mr. Tien to check on them, and Mr. Tien said he would inform Micropolis Singapore's CFO and its president of the situation. Mr. Tien further contends that he has a conscious policy and practice not to be involved in any decision making relating to Pemstar in his role as director of Micropolis Singapore. He personally paid for his trip to Minnesota.

After considering the parities' submissions, the Court finds that Singapore Technologies' contacts with Minnesota are not sufficient to establish personal jurisdiction. A review of Minnesota case law indicates that "much more extensive contacts with Minnesota have been found not to confer jurisdiction in other cases." See, e.g., Krambeer v. Eisenberg, 923 F. Supp. 1170, 1174-75 (D. Minn. 1996) (citing Schuck v. Champs Food Sys. Ltd., 424 N.W.2d 567, 570 (Minn. Ct. App. 1988)(defendant's contacts with Minnesota, which included correspondence it sent three times, correspondence it received eight times, and three telephone conversations, were insufficient to confer personal jurisdiction)); Maies Lumber & Supply, Inc. v. Chancey Trailers, 354 N.W.2d 585, 587 (Minn. Ct. App. 1984) (holding that a seven-month contract negotiation via telephone and mail did not confer the court with personal jurisdiction).

We recognize that "[i]n determining whether 'minimum contacts' exist, contacts with the forum state that are made on behalf of the defendant by others may be considered." Digi-Tel, 89 F.3d at 523-24. "The Supreme Court has indicated that "when commercial activities are 'carried on in behalf of' an out-of-state party those activities may sometimes be ascribed to the party, at least where [it] is a 'primary participan[t]' in the enterprise and has acted purposefully in directing those activities." Id. (alterations in original) (citing Burger King, 471 U.S. at 480 n. 22) See also, Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 820 n. 1 (8th Cir. 1994).

For example, in U.S. Kids, the Eighth Circuit "considered a visit by an independent businessman on behalf of the defendant to plaintiff's place of business as a contact between defendant and the forum state" where it appeared that all of the contacts of the third party were made solely on behalf of the defendant and in the advancement of the contract at issue. U.S. Kids, 22 F.3d at 820. In conducting its analysis, the court noted that "the determination of whether minimum contacts exist "is one in which few answers will be written in black and white." Id. The court continued noting that "[t]he greys are dominant and even among them the shades are innumerable." Id.

Nonetheless, the U.S. Kids court reasoned that it could fairly ascribe the third party's contacts to the defendant, in part, because the third party lacked any independent relationship with the plaintiff and had no reason to visit plaintiff's business other than as defendant's agent, and the defendant "specifically sought the benefits and protection of [the forum state] both in the "police and fire protection and perhaps other services for the facilities at which [it] took possession . . . ." Id.

The circumstances in this case are distinguishable from the circumstances in U.S. Kids, however, for a number of reasons. The evidence is insufficient to make a prima facie showing that Mr. Tien visited Minnesota solely on behalf of Singapore Technologies or that his visit was solely to advance the transaction at issue. Plaintiff's own evidence shows that it had relationships with Mr. Tien outside the scope of his relationship with Defendant. See, e.g., (Affidavit of Robert R. Murphy at ¶ 5) ("I am aware that Pemstar was involved in a Thailand joint venture with Italade, which was owned in part by Mr. Tien, Singapore Technologies, and Mr. Gabriel Yu.") Moreover, Plaintiff only *believed* Mr. Tien was visiting Minnesota on behalf of Singapore Technologies. The "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Plaintiff did not substantiate that Singapore Technologies was a primary participant in the enterprise or acted purposefully in directing the activities of the enterprise between Plaintiff and Micropolis USA. As the parent corporation of a subsidiary that owned Micropolis USA, it appears to this Court that Singapore Technologies was at least two steps removed from primary participation in the enterprise.

**B. Nature And Quality of Contacts**

When the quantity of contacts is minimal, as in this case, the nature and quality of the contacts with the forum state may be dispositive. Krambeer, 923 F. Supp. at 1174 ("When the quantity of contacts is as minimal as this case . . . that factor is not dispositive; the Court must rely on the nature and quality of the contacts."); Trident Enter. Int'l. v. Kemp & George, Inc., 502 N.W.2d 411, 415 (Minn. Ct. App. 1993) ("When the

quantity of contacts is minimal, as in the present case, the nature and quality of the contacts with a state are dispositive.")

In this case, Plaintiff expressly asks the Court to find that it has personal jurisdiction over Singapore Technologies based on Plaintiff's allegation that Micropolis USA had either actual or apparent authority to bind Singapore Technologies. Plaintiff relies on statements and conduct by Micropolis USA employees Mr. Yi and Mr. Tovey and statements made by Mr. Tien to support its claim. Plaintiff, however, fails to show how the nature and quality of such statements or conduct constitute an act by which Singapore Technologies purposefully availed itself of the privilege of conducting business within Minnesota. Hanson v. Denckla, 357 U.S. 235, 253 (1958) (it is essential that "there be some act by which defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."); Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE) Ltd., 89 F.3d 519, 524 (8th Cir. 1996) (defendant failed "to produce evidence to support the inference that the [parent company's] activities were directed by or primarily for the benefit" of defendant); General Elec. Corp. v. Grossman, 991 F.2d 1376, 1388 (8th Cir. 1993) (finding no personal jurisdiction over account firm defendant in a lawsuit based upon financial statements sent by defendant into forum state).

Plaintiff next asks the Court to assert personal jurisdiction over Defendant based upon allegations that in mid 1997 either Micropolis USA or Singapore Technologies paid some of Micropolis USA's outstanding debt to Pemstar. Plaintiff contends that the Court should infer that since a portion of Micropolis USA's debt to Pemstar was paid,

Singapore Technologies purposefully availed itself of Minnesota law. Whatever relevance this evidence may have to Plaintiff's claim on the merits, it is not particularly probative on the issue of whether Defendant has submitted to the jurisdiction of Minnesota.

Plaintiff also argues that the nature and quality of Mr. Tien's 1997 visit and e-mail messages to Pemstar support the Court's assertion of personal jurisdiction. In support of its claim, Plaintiff alleges that during Mr. Tien's 1997 visit to Minnesota he discussed Pemstar's concern over Micropolis USA's delinquent payments, requested that Pemstar work with Micropolis USA's comptroller regarding the payments, said that he would resolve the issue of the delinquent payments when he returned to Singapore and assured Pemstar that Singapore Technologies would, if necessary, pay Micropolis USA's past due account in full. Mr Tien's 1997 visit to Minnesota is not shown to be sufficiently related to responsibility for a debt balance owed years later.

In addition, as evidenced by Pemstar's reply to Mr. Tien's e-mail, it appears that Pemstar itself intended to follow-up with someone at one of the Micropolis companies, not someone from Singapore Technologies, regarding the debt. See Affidavit of Robert W. Vaccaro ("Vaccaro Aff.") at Exh. 4 ("We're pressing Micropolis for payment this week on the past due amount.").

Plaintiff also asks the Court to impute Mr. Tien's e-mail messages to Singapore Technologies and conclude on that basis that Singapore Technologies purposefully availed itself of the benefits and protections of Minnesota law. The Court finds, however, that Plaintiff failed to present any evidence that would allow the Court to ascribe Mr. Tien's e-mail messages to an action by Singapore Technologies by which it

purposefully availed itself of the laws of the forum state. The Court rejects Plaintiff's claim that because the e-mail messages were sent from a Singapore Technologies e-mail address Defendant purposefully availed itself of Minnesota law.

Even if the Court were to impute Mr. Tien's e-mail messages to Singapore Technologies, standing alone, the e-mail messages are not sufficient to establish personal jurisdiction over the Defendant. The e-mail is analogous to other forms of interstate communication, and the Eighth Circuit has repeatedly held that the use of interstate mail or telephone alone is insufficient to establish minimum contacts with the forum state. See, e.g., First Nat'l Bank of Lewisville, Arkansas v. First Nat'l Bank of Clinton, Kentucky, 258 F.3d 727, 729 (8th Cir. 2001) (telephone calls add nothing to the quality of contacts); Bell Paper Box, Inc. v. Trans Western Polymers, Inc., 53 F.3d 920, 923 (8th Cir. 1995) ("The use of interstate facilities, such as telephones or mail, is a 'secondary or ancillary' factor and cannot alone provide the 'minimum contacts' required by due process."); T.J. Raney & Sons, Inc. v. Security Savings and Loan Ass'n, 749 F.2d 523, 525 (8th Cir. 1984) ("the use of interstate mail, telephone or banking facilities, standing alone" is insufficient to satisfy the requirements of due process); Mountaire Feeds, Inc. v. Argo Impex, S.A., 677 F.2d 651, 656 (8th Cir. 1982) ("the use of arteries of interstate mail, telephone, railway and banking facilities is insufficient, standing alone, to satisfy due process").

"Courts have pointed out that the critical focus in a jurisdictional analysis is on 'the relationship among the defendant, the forum and the litigation." Krambeer v. Eisenberg, 923 F. Supp. 1179, 1175 (D. Minn. 1996). Thus, it is "Defendants' contacts

with the forum state, *not* their contacts with residents of the forum," that must be considered by the court. Id. (emphasis added) (citing Hanson, 357 U.S. at 250-55). In this case, the e-mail messages show nothing more than Mr. Tien's contact with residents of the forum. As discussed below, the messages do not illustrate that the relationship between the Defendant, the forum and the litigation are such that this Court may assert personal jurisdiction over the Defendant.

### C. **Relationship of the Cause of Action to the Contacts**

Plaintiff further asks the Court to find that it has jurisdiction over Singapore Technologies because it induced Pemstar to act to its detriment by assuring Pemstar that it would pay Micropolis USA's debt. Plaintiff relies on Marquette Nat'l Bank of Minneapolis v. Norris, 270 N.W.2d 290 (Minn. 1978), Trident Enter., 502 N.W.2d 411 and Barclay's Leasing v. National Business Sys., 750 F. Supp. 184 (W.D.N.C. 1990) to support its position. The cases relied on by Plaintiff are distinguishable from this case, however, because each of the cases addressed situations involving formal business relationships and transactions between the resident and the nonresident under which the residents were induced by the nonresident to enter into transactions with third parties, thereby conferring jurisdiction within the forum state.

In Marquette, defendants who had an existing business relationship with plaintiff, initiated negotiations with plaintiff for the release of stock pledged to and possessed by plaintiff that defendants needed to accomplish the purchase of all of the preferred stock of a third party company. In Trident, the defendant had a formal business relationship with the plaintiff and requested that the plaintiff ask a third party to expedite

shipment of goods to the defendant and then bill plaintiff for the goods. The Trident plaintiff agreed to make the request and the third party complied with the request. The defendant, however, failed to pay the plaintiff for the goods. In Barclay's, the defendant executed a written guarantee regarding the third party's underlying debt to the plaintiff. None of the cases cited by Plaintiff involved an alleged guarantee by a foreign parent company of a foreign subsidiary whose domestic subsidiary owed money to the plaintiff. Therefore, the Court finds the cases cited by Plaintiff are not persuasive and do not provide a basis upon which this Court may exercise personal jurisdiction over the Defendant.

### D. Minnesota's Interest in Providing a Forum For its Residents

This factor is not dispositive because although "Minnesota has an obvious interest in providing a local forum in which its residents may litigate claims against nonresidents," Minnesota's interest in providing such a forum cannot make up for the absence of minimum contacts, as in this case. Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519, 525 (8th Cir. 1996) (citing Falkirk Mining Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 376 (8th Cir. 1990)).

### E. Convenience of the Parties

The convenience of the parties favors neither Plaintiff nor Defendant. For this factor, the Court must consider the relative conveniences and inconveniences to the parties. We recognize that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." Falkirk Mining Co., 906 F.2d at 376 (noting that the foreign defendant would have

substantial travel, legal, and financial burdens in defending itself in the forum state) (quoting Asahi Metal Industry Co., Ltd., 480 U.S. at 114). We also realize that a plaintiff is normally entitled to select the forum in which it litigates its claims. Northrup King, 51 F.3d at 1388. Here, witnesses and documentary evidence are located in Minnesota, Singapore and perhaps other places. Whatever inconvenience Defendant may incur if the matter is litigated in Minnesota is equaled by the inconvenience Plaintiff may incur if the matter were litigated in Singapore. Thus, this factor is neutral. See, e.g., Digi-Tel, 89 F.3d at 525 (when witnesses are in both Minnesota and Singapore, the convenience of the parties favors neither side).

## RECOMMENDATION

For the reasons set forth above, it is recommended that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction Under Rule 12(b)(2) [Docket Nos. 7 and 14] be granted.

Dated: March 29, 2002

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **April 15, 2002** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **April 15, 2002**.